

FILED
NOV 15 2007
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br><br>　　　　v.<br><br>Jose HEREDIA-Guzman (1)<br>Juan Carlos VASQUEZ-Mendoza (2)<br>Ramon GALLARDO-Samano (3)<br><br>　　　　Defendants | Mag. Case No. '07 MJ 8927<br><br>COMPLAINT FOR VIOLATION OF:<br><br>Title 8, U.S.C., § 1324(a)(1)(A)(ii)<br>Illegal Transportation of Aliens and<br>Title 18 U.S.C. § 2, Aiding and Abetting<br>(Felony) |

The undersigned complainant, being duly sworn, states:

On or about November 13, 2007, within the Southern District of California, defendants Jose HEREDIA-Guzman, Juan Carlos VASQUEZ-Mendoza, and Ramon GALLARDO-Samano, with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, Martin SANCHEZ-Campos, Juan Ramon YUPIT-Chac, and Nicanora MORENO-Koh had come to, entered and remained in the United States in violation of law, did transport and move said aliens within the United States in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

And the complainant states that this complaint is based on the attached statement of facts which is incorporated herein by reference.

_____
Marco A. Miranda
Senior Border Patrol Agent

SWORN TO BEFORE AND SUBSCRIBED IN MY PRESENCE THIS 15th DAY OF NOVEMBER 2007.

_____
Peter C. Lewis
United States Magistrate Judge

1  UNITED STATES OF AMERICA
2         v.
3  Jose HEREDIA-Guzman (1)
4  Juan Carlos VASQUEZ-Mendoza (2)
5  Ramon GALLARDO-Samano (3)

6                    STATEMENT OF FACTS

7  The complainant states that this complaint is based upon statements in the investigative reports by the apprehending U. S. Border Patrol Agents S. Carter, M. Harrington, J. Vega-Torres, and M. Sandoval. On November 13, 2007, Jose HEREDIA-Guzman a Mexican citizen, Juan Carlos VASQUEZ-Mendoza, a Mexican citizen and Ramon GALLARDO-Samano a Legal Permanent Resident were apprehended near Calexico, California, as they smuggled (8) eight undocumented aliens from Mexico to the United States.

At approximately 6:00 p.m., Agent Carter was operating the Calexico Border Patrol Station's Remote Video Surveillance System (RVSS) observed several suspected illegal aliens raft across the Briar Canal several hundred yards west of the Calexico East Port of Entry. Agent Carter informed agents of his observations and maintained visual of the suspected illegal aliens as the group continued running north through agricultural fields. Agent Harrington and Vega-Torres who were positioned east of the suspected illegal aliens location noticed a pick up truck stopped for a brief moment along Carr Road.

Agent Vega-Torres responded to the area where the suspected illegal aliens were last seen. Agent Vega-Torres noticed a green colored Ford Crown Victoria bearing California license plates 5XOB771. Agent Vega-Torres followed the vehicle and noticed that the vehicle was traveling in a circle. The sedan continued westbound towards Barbara Worth Road then turned northbound on Barbara Worth Road.

Agent Vega-Torres remained near the intersection of Barbara Worth Road and Carr Road. Agent Vega-Torres noticed a white Ford Aerostar van turn onto Carr Road and proceed toward the group of suspected illegal aliens. Agent Harrington observed as the white van made a pass near the group and continued eastbound on Carr Road.

Several minutes later the same white van made another pass by the suspected group of illegal aliens. At the same time, Agent Harrington noticed the green Crown Victoria pass his location. The white van and the green sedan passed each other traveling in opposite directions. During this pass the van proceeded towards the group of suspected illegal aliens. The RVSS Operator immediately notified other agents that the group of suspected illegal got up and ran towards the white van. Both Agents Vega-Torres and Harrington also observed the suspected illegal aliens board into the Aerostar van. The Aerostar pulled back onto Carr road and continued eastbound.

Agent M. Sandoval, who was near the area, followed the van as it traveled eastbound on Carr Road then turned northbound onto Highway 7. The van continued westbound onto Interstate 8. Agent Sandoval was able to get an unobstructed view of the driver, who was wearing a light colored T-shirt with several stripes on the front. Agents S. Sedano and Harrington proceeded behind Agent Sandoval.

Agent Vega-Torres believing that the Ford Crown Victoria was involved in the smuggling, followed the sedan from a distance.

Agents Harrington and Sedano activated their service vehicle's emergency lights and sirens indicating the driver of the Ford Aerostar van to stop. The driver who was later identified as Jose HEREDIA-Guzman ignored the lights and siren and continued westbound on Intestate 8.

Agent A. Mills who was positioned east of the Bowker Road overpass successfully deployed the Controlled Tire Deflation Device (CTDD). HEREDIA continued driving westbound for several hundred yards. HEREDIA turned north leaving the westbound lanes of the interstate and continued driving westbound in a muddy area. As the van continued on the muddy road, Agent Harrington was also able to get an unobstructed view of the driver. The van rolled on it's roof to a stop near the "Bowker Road Next Exit" sign.

Agents Sedano, Harrignton, and Sandoval immediately approached the vehicle and identified themselves as United States Border Patrol Agents. Agent Harrington found HEREDIA sitting in the front passenger seat. Agent Harrington conducted a brief interview with HEREDIA. HEREDIA claimed to be a citizen of Mexico without any immigration dociuments

1  that would allow him to be in, work or remain in the United States legally. HEREDIA was
2  placed subsequently arrested.
3      Agent Sedano approached the passenger side of the van found nine occupants inside of
4  the van. Agent Sedano conducted interviews with the group, including the one individual later
5  identified as Juan Carlos VASQUEZ-Mendoza who was determined to be the foot guide. All
6  nine including VASQUEZ, admitted to being citizens and nationals of Mexico illegally in the
7  United States. All of the nine subjects were arrested.
8      Agent Vega-Torres continued following the Ford Crown Victoria. The Crown Victoria
9  traveled through several roads then entering Interstate 8. The sedan traveled passed the location
10 of the other agents. Suspecting that the sedan was involved in the smuggling, Agents Vega-
11 Torres and Mills performed a vehicle stop on Interstate 8 near Highway 111. Agent Mills
12 conducted a brief interview with the driver who was identified as Ramon GALLARDO-Samano.
13 GALLARDO claimed to be a citizen of Mexico without any immigration documents that would
14 allow him to be in, work, or remain in the United States legally. GALLARDO was arrested.
15     BPA Vega-Torres, witnessed by BPA Sedano, read HEREDIA his Miranda rights.
16 HEREDIA stated he understood his rights and was willing to answer questions without the
17 presence of an attorney. HEREDIA stated that he met with an unknown smuggler in the streets
18 of Mexicali. HEREDIA stated that he was being charged $1,500.00. HEREDIA stated that he
19 didn't have any money to pay and made arrangements to drive for the smuggler. HEREDIA said
20 he was taken to Indio, California and given keys to a van. HEREDIA was given instructions to
21 drive back to Calexico, California and drive to Wal-Mart. HEREDIA said that while at Wal-
22 Mart he was given instructions on where to pick up the illegal aliens. HEREDIA said that he was
23 led by someone else to pick up the aliens. HEREDIA said he made two passes by the load up
24 spot because the aliens were not there yet. HEREDIA stated that when he picked up the illegal
25 aliens he opened the side door for them and told them to get in. HEREDIA was shown a six
26 pack photo line up and was unable to identify anyone in the pictures.
27     BPA Vega-Torres, witnessed by Agent Sedano, read Juan Carlos VASQUEZ-Mendoza
28 his Miranda rights. VASQUEZ stated he understood his rights and was willing to answer
29 questions without the presence of an attorney. VASQUEZ stated that he is a citizen and national

of Mexico. VASQUEZ stated that he understood that he was arrested for guiding illegal aliens into the United States. VASQUEZ stated that on today's date he guided eight illegal aliens into the United States. VASQUEZ said that he receives $50.00 for each illegal alien that he successfully guides into the United States. VASQUEZ stated that he was going to receive $400.00 for today's job. VASQUEZ also said that his hob was to take them to the spot where they were to be picked up. VAQUEZ said that he has been successful on guiding on ten previous occasions. VASQUEZ was shown a six pack photo line up and was unable to identify anyone.

BPA Vega-Torres, witnessed by Agent Sedano, read Ramon GALLARDO-Samano his Miranda rights. GALLARDO stated he understood his rights and was willing to answer questions without the presence of an attorney. GALLARDO stated that he had a B1/B2 Visa, but it was stolen. GALLARDO stated that he never reported it stolen or attempted to replace it. GALLARDO also stated that he illegally entered the United States approximately two months ago. GALLARDO stated that he understood that he was arrested for not having any documents. GALLARDO said that he was driving around the Calexico, California surrounding to waste time. During the interview, GALLARDO verified that the Motorola i425 cell phone was his personal phone. The numbers that were in GALLARDO'S personal phone were compared with the numbers on HEREDIA'S phone. The phone numbers were similar, but had different names. GALLARDO'S phone indicates conversations between him and three of these numbers during the time that GALLARDO claims to be wasting time. GALLARDO was shown a six pack photo line up. GALLARDO stated that he recognized Jose HEREDIA-Guzman. GALLARDO stated that HEREDIA is a friend and that he talked to him earlier. GALLARDO stated that he and HEREDIA must have the same mutual friends.

Material Witnesses Martin SANCHEZ-Campos, Juan Ramon YUPIT-Chac, and Nicaora MORENO-Koh stated they are citizens of Mexico illegally present in the United States. YUPIT and MORENO stated they were unaware of the amount that they were going to pay the smuggler. SANCHEZ had made arrangements to pay $2,300 to be smuggled into the United States. SANCHEZ positively identified VASQUEZ from a six-pack photo line-up as the smuggler that rafted the group across the canal and guided the group to the highway. YUPIT positively identified defendant VASQUEZ from a six-pack photo line-up as the foot guide that guided them

into the United States. MORENO was unable to positively identified anyone from a six pack photo.

The complainant states that the names of the Material Witnesses are as follows:

| NAME | PLACE OF BIRTH |
|---|---|
| Martin SANCHEZ-Campos | Mexico |
| Juan Ramon YUPIT-Chac | Mexico |
| Nicaora MORENO-Koh | Mexico |

Further, complainant states that, Martin SANCHEZ-Campos, Juan Ramon YUPIT-Chac, and Nicaora MORENO-Koh are citizens of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material, that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.