1  KAREN P. HEWITT
   United States Attorney
2  LUELLA M. CALDITO
   Assistant U.S. Attorney
3  California State Bar No. 215953
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California  92101-8893
5  Telephone: (619) 557-7035
   Luella.Caldito@usdoj.gov
6
   Attorneys for Plaintiff
7  UNITED STATES OF AMERICA

8

9                    UNITED STATES DISTRICT COURT

10                 SOUTHERN DISTRICT OF CALIFORNIA

11
   UNITED STATES OF AMERICA,          )   CRIM. CASE NO.    07CR3353-JM
12                                     )
                          Plaintiff,   )   DATE:        January 4, 2008
13                                     )   TIME:        11:00 a.m.
                                       )
14 JOSE HEREDIA-GUZMAN (1),            )   Before Honorable Jeffrey T. Miller
   JUAN VASQUEZ-MENDOZA (2),           )
15 RAMON GALLARDO-SAMANO (3),          )   GOVERNMENT'S RESPONSE IN OPPOSITION TO
                                       )   DEFENDANT    VASQUEZ-MENDOZA    and
16                        Defendants.) )   DEFENDANT GALLARDO-SAMANO'S MOTION
                                       )   TO:
17                                     )   (1)    COMPEL DISCOVERY AND PRESERVE
                                       )          EVIDENCE;
18 _____ )      (2)    GRANT LEAVE TO FILE FURTHER
                                                  MOTIONS.
19

20      COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel,

21   KAREN P. HEWITT, United States Attorney, and Luella M. Caldito, Assistant United States

22 Attorney, and hereby files hereby files its Response in Opposition to defendant Juan Vasquez-Mendoza

23 and defendant Ramon Gallardo-Samano's above-referenced Motions.  This Response is based upon

24 the files and records of this case.

25                                    **I**

26                         **STATEMENT OF THE CASE**

27      On December 12, 2007, a federal grand jury in the Southern District of California returned a

28 seven count Indictment charging defendants Jose Heredia-Guzman, Juan Carlos Vasquez-Mendoza and

   Ramon Gallardo-Samano with one count of conspiracy to bring in illegal aliens into the United States

1   for financial gain in violation of Title 8, United States Code, Section 1324 (a)(2)(B)(ii) and Title 18,

2   United States Code, Section 371, three counts of bringing in illegal aliens for financial gain and aiding

3   and abetting, in violation of Title 8, United States Code, Section 1324 (a)(2)(B)(ii) and Title 18, United

4   States Code, Section 2 and three counts of transporting and moving illegal aliens within the United

5   States and aiding and abetting, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii)

6   and (v)(II).  Defendants were arraigned on the Indictment on December 13, 2007, and entered a plea

7   of not guilty.

8                                                        **II**

9                                       **STATEMENT OF FACTS**

10  **A.      The Smuggling Offense**

11          On November 13, 2007, at approximately 6:00 p.m., Border Patrol Agent Stephen Carter was

12  operating the Remote Video Surveillance System (RVSS) observed a group of suspected illegal aliens

13  raft across the Briar Canal. This area is located several hundred yards to the west of the Calexico East

14  Port of Entry.   Agent Carter continued to observe the group and informed other agents that the group

15  had rafted across the Briar Canal and ran north through the agricultural fields towards Carr Road.

16          Initially, Agent Vega-Torres and Agent Harrington positioned themselves in an area several

17  hundred yards east of the group.  However, as Agent Vega-Torres drove towards the area where the

18  group of illegal aliens were last seen,  he noticed that he was traveling behind a green Ford Crown

19  Victoria ("the vehicle"), bearing California license plate 5XOB771.   When the vehicle turned

20  westbound on Carr Road, Agent Vega-Torres noticed that the vehicle was traveling in a circle.  Agent

21  Vega-Torres followed the vehicle as it traveled westbound to Barbara Worth Road.  When the vehicle

22  turned north on Barbara Worth Road, Agent Vega-Torres remained near the intersection of Carr Road

23  and Barbara Worth Road.

24          Meanwhile, Agent Harrington observed the group of suspected illegal aliens run north through

25  the fields and then lie down a short distance south of Carr Road.  Agent Vega-Torres then observed

26  a white Ford Aerostar van ("the van") turn onto Carr Road and travel towards the group of suspected

27  illegal aliens.  Agent Harrington then observed the van pass the group's location and continue to drive

28  eastbound on Carr Road.  Minutes later, Agent Vega-Torres observed the van once again drive towards

1 the group's location.  At approximately the same time, Agent Harrington once again observed the

2 Crown Victoria pass his location on Carr Road.

3    The van and the vehicle passed each other, traveling in opposite directions on Carr Road. The

4 vehicle continued to drive westbound towards Agent Vega-Torres.  The van pulled to the side of the

5 road and stopped near the group.  Both Agent Carter, who was still operating the RVSS, and Agent

6 Harrington observed the group enter the van.  Border Patrol agents began to follow the van and shortly

7 thereafter, activated their emergency lights and sirens to stop the van.  The driver of the van, later

8 identified as defendant Jose Heredia-Guzman, ignored the lights and sirens and continued westbound

9 on Interstate 8. A controlled tire deflation device was used to stop the van.  However, defendant

10 Heredia-Guzman continued to drive the van and then moved to the passenger seat of the van while it

11 was still moving.  Eventually, the disabled van rolled to a stop one foot away from a large wooden post.

12    Border Patrol agents approached the van and identified themselves.  Agent Harrington made

13 contact with defendant Heredia-Guzman, who was seated in the front passenger seat.  Defendant

14 Heredia-Guzman stated that he was a citizen of Mexico without any immigration documents to allow

15 him to be in the United States.   Nine other individuals were found crouched down in the rear portion

16 of the van.  All nine individuals stated they were citizens of Mexico without any immigration

17 documents that would allow them to be in the United States.  All the individuals were arrested and

18 transported to the Calexico Border Patrol Station.

19    Meanwhile, Agent Vega-Torres began to follow the Crown Victoria after it passed him on Carr

20 Road.  The vehicle zig-zagged back and forth on the lightly traveled road until it ultimately entered

21 Interstate 8 and drove passed the location where the other agents had apprehended the van.  Agent

22 Vega-Torres and Agent Mills conducted a stop of the vehicle.  The agents made contact with the driver

23 of the vehicle, later identified as defendant Gallardo-Samano.  Defendant Gallardo-Samano claimed

24 to be a citizen of Mexico without any immigration documents that would allow him to be in the United

25 States.  Defendant Gallardo-Samano was arrested and transported to the Calexico Border Patrol

26 Station.

27

28

1        **1.     Defendant Heredia-Guzman's Statement of the Offense**

2        At approximately 10:09 p.m., Agent Vega-Torres advised defendant Heredia-Guzman of his

3    Miranda rights, which he acknowledged and waived.  Heredia-Guzman again stated that he was a

4    citizen of Mexico without any immigration documents.  Heredia-Guzman admitted that he illegally

5    entered the United States five days prior to his arrest. Once in the United States, Heredia-Guzman met

6    with a smuggler named "Cholo."  Cholo offered to transport Heredia-Guzman to Indio, California for

7    $1500. Since Heredia-Guzman did not have the money to pay the smuggling fee, he agreed to "drive"

8    for Cholo in lieu of the smuggling fee.

9        Heredia-Guzman was taken to Indio, California where he was then given keys to the white van.

10   The smugglers instructed Heredia-Guzman to drive back to the Walmart in Calexico, California.  He

11   arrived at the Walmart at approximately 5:00 p.m. on November 13, 2007.  Once there, he received a

12   phone call on his cellular phone and was instructed to pick up the illegal aliens.  Heredia-Guzman was

13   given directions as to where to pick up the illegal aliens.  The first time he drove passed the location,

14   he did not see the group.  When he made the second trip, someone called him on his phone and told

15   him where to stop the van.  When he stopped, approximately seven individuals entered the van.

16       Once he picked up the aliens, he began to drive towards El Centro, California.  Heredia-

17   Guzman admitted that he did not stop the van when he saw the agents' lights and sirens or after he felt

18   the van's tires deflating.  Instead, Heredia-Guzman admitted that he moved to the passenger seat of the

19   van while it was still in motion and instructed the smuggled aliens not to tell the agents that he was

20   driving the van.

21       **2.     Defendant Vasquez-Mendoza's Statement of the Offense**

22       At approximately 11:44 p.m., Agent Vega-Torres advised defendant Vasquez-Mendoza of his

23   Miranda rights, which he acknowledged and waived. Vasquez-Mendoza again stated that he was a

24   citizen of Mexico without any immigration documents.  Vasquez-Mendoza also admitted that he

25   guided eight illegal aliens into the United States and that he was to receive $50.00 for each alien.

26       Vasquez-Mendoza stated that he led the group across canals and eventually to the loading spot

27   where they were picked up by the van.  The driver of the van opened the door and instructed them to

28   get inside the van and to sit down. Vasquez-Mendoza realized that they were being followed when he

1  heard the sirens and saw the lights.  Vasquez-Mendoza further stated that after the van's tires had

2  popped, the driver of the van got out of the driver's seat.  The van kept moving without a driver and

3  eventually came to a stop.

4         **3.**     **Defendant Gallardo-Samano's Statement of the Offense**

5       At approximately 12:20 a.m. on November 14, 2007, Agent Vega-Torres advised defendant

6  Gallardo-Samano of his <u>Miranda</u> rights, which he acknowledged and waived.  Defendant Gallardo-

7  Samano stated that he was a citizen of Mexico and that he had a border crosser card which was stolen

8  in May of 2007.

9       Gallardo-Samano stated that he had illegally entered the United States approximately two

10  months. On November 13, 2007, he had an argument with his girlfriend and decided to go to Mexicali.

11  He drove to the Walmart in Calexico.  Once there, he called his girlfriend and asked her to go to

12  Mexico with him.  She agreed and they had planned to meet at the Walmart.  Gallardo-Samano further

13  claimed that he drove around the area surrounding the Calexico East Port of Entry to waste time  while

14  he waited for his girlfriend to arrive.

15       Gallardo-Samano denied any involvement in the smuggling offense.

16         **4.**     **Cellular Phones**

17       One cellular phone was seized from defendant Heredia-Guzman and one cellular phone was

18  seized from defendant Gallardo-Samano.  Agents compared the numbers from both phones and

19  discovered that the two phones had four common numbers in their list of contacts.  Defendant

20  Gallardo-Samano's phone showed that he had contact from three of these four numbers during the time

21  he claimed to be waiting for his girlfriend.

22         **5.**     **Material Witnesses' Statements**

23       Three illegal aliens from the van were retained as material witnesses – Martin Sanchez-Campos,

24  Juan Ramon Yupit-Chac and Nocaora Moreno-Koh. Each provided a videotaped statement, in which

25  they admitted to being citizens and nationals of Mexico with no legal right to enter or reside in the

26  United States. Sanchez-Campos stated that he was going to pay $2300 to be smuggled to New York.

27  Yupit-Chac stated that he was going to pay an unknown amount to be smuggled to Los Angeles,

28

1  California.  Moreno-Koh stated that her husband was going to pay a fee for her to be smuggled into

2  the United States.

**III**

**ARGUMENT**

**A.      Motion to Compel Discovery**

The United States has and will continue to fully comply with its discovery obligations.  To date, the United States has produced 135 pages of discovery to defendants' counsel including two DVDs containing the defendants' post-arrest statements and the statements of the material witnesses. As of today, the United States has received no reciprocal discovery.  Counsel believes that all discovery disputes can be resolved amicably and informally in this case.  In view of the below-stated position of the United States concerning discovery, it is respectfully requested that no orders compelling specific discovery by the United States be made at this time.   The Government has no objection to the preservation of evidence for a reasonable time period.

1.      Brady Material

The United States is well aware of and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment.  Defendant, however, is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused, or which pertains to the credibility of the United States' case.  As stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality." Id. at 774-775 (citation omitted).

The United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

Although the United States will provide conviction records, if any, which could be used to impeach a witness, the United States is under no obligation to turn over the criminal records of all witnesses.  United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976).  When disclosing such

6

1   information, disclosure need only extend to witnesses the United States intends to call in its case-in-

2   chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d

3   1305, 1309 (9th Cir. 1979).

4          Finally, the United States will continue to comply with its obligations pursuant to United States

5   v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

6          2.      Any Proposed 404(b) Evidence

7          The United States will disclose, in advance of trial, the general nature of any "other bad acts"

8   evidence that the United States intends to introduce at trial pursuant to Federal Rule of Evidence

9   404(b).

10         3.      Request for Preservation of Evidence

11         The United States will preserve all evidence to which the Defendants are entitled pursuant to

12  the relevant discovery rules. The United States also has no opposition to a preservation order, should

13  Defendant seek one from this Court.

14         4.      Defendant's Statements

15         The United States recognizes its obligation under Federal Rules of Criminal Procedure

16  ("Rules") 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant any written statements and the

17  substance of Defendant's oral statements. The United States has produced all of Defendant's

18  statements that are known to the undersigned Assistant U.S. Attorney at this time. If the United States

19  discovers additional oral or written statements that require disclosure under the relevant Rules, such

20  statements will be promptly provided to Defendant.

21         5.      Tangible Objects

22         The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing

23  Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy tangible objects that

24  are within its possession, custody, or control, and that is either material to the preparation of

25  Defendant's defense or is intended for use by the United States as evidence during its case-in-chief at

26  trial, or was obtained from or belongs to Defendant. The United States, however, need not produce

27  rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

28

1        6.     Expert Witnesses

2       The United States will comply with Rule 16(a)(1)(G) and provide Defendant with a written

3 summary of any expert testimony that the United States intends to use during its case-in-chief at trial

4 under Federal Rules of Evidence 702, 703 or 705.

5        7.     Witness Addresses

6       The United States objects to this request as overbroad, unnecessary, and unsupported. Through

7 discovery, Defendant has the names of the officers and agents involved in her arrest. In addition, the

8 United States will provided Defendant with a list of witnesses it intends to call in its trial memorandum.

9 The United States objects to the request for the name and address of witnesses who will not be called

10 by the Government at trial as overbroad and irrelevant.

11       8.     Jencks Act Material

12      The United States will comply with its discovery obligations under the Jencks Act, Title 18,

13 United States Code, Section 3500, and as incorporated in Rule 26.2.

14       9.     Informants and Cooperating Witnesses

15      At this time, the United States is not aware of any confidential informants or cooperating

16 witnesses involved in this case. The Government must generally disclose the identity of informants

17 where: (1) the informant is a material witness, and (2) the informant's testimony is crucial to the

18 defense. Roviaro v. United States, 353 U.S. 53, 59 (1957). If there is a confidential informant involved

19 in this case, the Court may, in some circumstances, be required to conduct an in camera inspection to

20 determine whether disclosure of the informant's identity is required under Roviaro. See United States

21 v. Ramirez-Rangel, 103 F.3d 1501, 1508 (9th Cir. 1997). If the United States determines that there is

22 a confidential informant or cooperating witness who is a material witness with evidence helpful to the

23 defense or essential to a fair determination in this case, the United States will either disclose the

24 identity of the informant or submit the informant's identity to the Court for an in camera inspection.

25      10.    A-File of Material Witnesses

26      The Government has no objection to allow Defendant to view the A-file of the material

27 witnesses at a time mutually agreeable to all parties.

28

07CR3353-JM

1    11.    <u>Residual Request</u>

2    The United States has complied with Defendant's residual request for prompt compliance with

3    Defendant's discovery requests and will continue to do so.

4    **B.    <u>Motion for Leave to File Further Motions</u>**

5    The Government opposes this request unless the motion is based upon newly discovered

6    evidence not available to Defendant at the time of the motion hearing.

7    **IV**

8    **<u>CONCLUSION</u>**

9    For the foregoing reasons, the United States requests that Defendant's Motions be denied where

10    opposed.

11

12    DATED: December 29, 2007

13                                        Respectfully Submitted,

14                                        KAREN P. HEWITT
                                          United States Attorney
15
                                          <u>s/ Luella M. Caldito</u>
16
17                                        LUELLA M. CALDITO
                                          Assistant U.S. Attorney
18

19

20

21

22

23

24

25

26

27

28

07CR3353-JM

1

2

3

4

**UNITED STATES DISTRICT COURT**

5

**SOUTHERN DISTRICT OF CALIFORNIA**

6

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Criminal Case No.  07CR3353-JM |
| Plaintiff, | ) |
| | ) **CERTIFICATE OF SERVICE** |
| v. | ) |
| | ) |
| JOSE HEREDIA-GUZMAN (1), | ) |
| JUAN VASQUEZ-MENDOZA (2), | ) |
| RAMON GALLARDO-SAMANO (3), | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

7

8

9

10

11

12

13

14

IT IS HEREBY CERTIFIED THAT:

15

16    I, LUELLA M. CALDITO, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

17

18    I am not a party to the above-entitled action.  I have caused service of GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT HEREDIA-GUZMAN AND DEFENDANT GALLARDO-SAMANO'S MOTION TO (1) COMPEL DISCOVERY AND PRESERVE EVIDENCE

19    AND (2) GRANT LEAVE TO FILE FURTHER MOTIONS.

20    on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

21

22    **Frank A. Balistrieri, Counsel for Defendant Jose Heredia-Guzman;**
      **Zandra Lopez, Counsel for Defendant Juan Vasquez-Mendoza;**
      **Joseph Milchen, Counsel for Defendant Ramon Gallardo-Samano**; and
23    **Wayne Mayer, Counsel for the Material Witnesses**

24

25    I declare under penalty of perjury that the foregoing is true and correct. Executed on December 29, 2007.

26

27                                        s/ Luella M. Caldito

                                          LUELLA M. CALDITO
28