Joseph Milchen
Attorney at Law
136 Redwood Street
San Diego, CA  92103
(619) 291-3399
California State Bar No. 38098

Attorney for Defendant
Ramon Gallardo-Samano

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA
(Honorable Jeffrey Miller)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR No. 07-CR-3353-JM |
| | ) | |
| Plaintiff, | ) | NOTICE OF MOTION AND |
| | ) | MOTION TO SUPPRESS |
| v. | ) | ILLEGALLY OBTAINED |
| | ) | EVIDENCE |
| RAMON GALLARDO-SAMANO, | ) | |
| | ) | Date: February 22, 2008 |
| Defendant. | ) | Time: 11:00 a.m. |
| | ) | |

TO:  Karen P. Hewitt, United States Attorney, Luella Caldito, Assistant U.S. Attorney, Southern District of California, San Diego, CA

NOTICE OF MOTION

Please take notice that on February 22, 2008 at 11:00 a.m., or as soon thereafter as counsel may be heard, defendant Ramon Gallardo-Samano, through his attorney, Joseph Milchen, will move this Honorable Court to suppress illegally obtained evidence in the above-entitled matter.

*U.S. v. Gallardo-Samano*
Case No. 07CR3353-JM

## MOTION

Defendant, Ramon Gallardo-Samano, through his attorney, Joseph Milchen, respectfully moves this Honorable Court to suppress illegally obtained evidence in the above-entitled matter.

This motion is based upon the Fourth Amendment to the United States Constitution, the attached Statement of Facts and Memorandum of Points and Authorities, the files and records in this matter, and upon such other matters as may come before the court at the time of the hearing of this motion.

Dated:  January 23, 2008            Respectfully submitted


                                    S/ Joseph Milchen
                                    Joseph Milchen
                                    Attorney for Defendant
                                    Ramon Gallardo-Samano

Joseph Milchen
Attorney at Law
136 Redwood Street
San Diego, CA  92103
(619) 291-3399
California State Bar No. 38098

Attorney for Defendant
Ramon Gallardo-Samano

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA
(Honorable Jeffrey Miller)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR No. 07-CR-3353-JM |
| | ) | |
| Plaintiff, | ) | STATEMENT OF FACTS AND |
| | ) | MEMORANDUM OF POINTS AND |
| v. | ) | AUTHORITIES IN SUPPORT OF |
| | ) | MOTION TO SUPPRESS ILLEGALLY |
| RAMON GALLARDO-SAMANO, | ) | OBTAINED EVIDENCE |
| | ) | |
| Defendant. | ) | |
| | ) | |

I.

STATEMENT OF FACTS

Defendant Gallardo-Samano is named in a seven-count Indictment with conspiracy, aiding and abetting and bringing in illegal aliens for financial gain and transportation of illegal aliens, in violation of 8 U.S. C. § 1324(a)(1)(A)(ii), 8 U.S. C. § 1324(a)(1)(B)(ii), 18 U.S.C. §§ 2 and 371.

On November 13, 2007, Border Patrol agents were conducting surveillance of the area surrounding the Calexico East Port of Entry, an area

primarily made up of agricultural fields and irrigation canals along the international border between the United States and Mexico. Agents have apprehended numerous vehicles used to smuggle undocumented aliens in this area. They have also apprehended scout vehicles used to drive through the area prior to alien smuggling to look for law enforcement presence.

After becoming aware a group of undocumented aliens had entered the United States illegally on foot, agents observed a pickup truck stop for several seconds in an area commonly used to pick up illegal aliens then continue driving. Agents observed the pickup truck until it turned south toward Mexico.

Agents subsequently observed defendant driving a green 1990 Ford Crown Victoria, observed him turn westbound on Carr Road, turn northbound on Barbara Worth Road then eastbound on Highway 98. Several minutes later, the Crown Victoria traveled westbound on Carr Road where it passed an Aerostar van heading eastbound. That van was later determined to be involved in smuggling undocumented aliens. The van had been observed circling the area and conducting its own "scouting" for law enforcement. Agent Vega-Torres followed the Crown Victoria until it entered Interstate 8 heading westbound. Suspecting the Crown Victoria was a scout vehicle for the van and was involved in the smuggling activity, Agents Vega-Torres and Mills conducted a vehicle stop of the Crown Victoria.

II.

## POINTS AND AUTHORITIES

Under the Fourth Amendment, warrantless searches are per se unreasonable. *Katz v. United States*, 389 U.S. 347, 357, (1967); *United States v. Ventresca*, 380 U.S. 102, 106 (1965). While such searches are not absolutely prohibited, the exceptions to the warrant requirement are narrowly drawn and jealously guarded. *Jones v. United States*, 357 U.S. 493, 499 (1958); *United States v. Jeffers*, 342 U.S. 48, 51 (1951).

As such, the government bears the burden to prove that a warrantless search is reasonable. 4 W. LaFave, Search and Seizure 218 (2d ed. 1987); *United States v. Kaplan*, 895 F.2d 618, 622 (9th Cir. 1990); *United States v. Al-Azzawy*, 784 F.2d 890, 895 (9th Cir. 1985), cert. denied, 476 U.S. 1144 (1986).

An officer violates the Fourth Amendment if he detains a motorist without reasonable suspicion. *United States v. Fernandez-Castillo*, 324 F.3d 1114, 1117 (9th Cir. 2003); *Ornelas v. United States*, 517 U.S. 690, 693 (1996). "Reasonable suspicion" requires "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Thomas*, 211 F.3d 1186, 1189 (9th Cir. 2000); *United States v. Cortez*, 449 U.S. 411, 417 (1981).

In evaluating whether "reasonable suspicion existed to justify an investigatory stop, the court must consider the facts available to the officer *at the moment of seizure*. *United States v. Smith*, 217 F.3d 746, 749 (9th Cir. 2000) [emphasis added], citing, *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968).

In determining whether reasonable suspicion exists to justify a stop, the court looks at the totality of the circumstances. *United States v. Fernandez-Castillo, supra*, 324 F.3d at 1117, citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "Reasonable suspicion cannot be based on 'broad profiles which cast suspicion on entire categories of people without any individualized suspicion of the particular person being stopped.' *United States v. Rodriguez-Sanchez*, 23 F.3d 1488, 1492 (9th Cir.1994). It must be based on facts and not the 'mere subjective impressions of a particular officer.' *United States v. Hernandez-Alvarado*, 891 F.2d 1414, 1416 (9th Cir.1989)." *United States v.* Jimenez-Medina, 173 F.3d 752, 754 (9th Cir. 1999).

An agent's experience in detecting alien smuggling operations may be considered (*United States v. Franco-Munoz*, 952 F.2d 1055, 1058 (9th Cir.1991)), but a "mere hunch is insufficient to justify a stop." *United States v. Arvizu, supra*, 534 U.S. at 274. "While facts are to be interpreted in light of an officer's experience, 'experience may not be used to give officers unbridled discretion in making a stop.'" *United States v. Jimenez-Medina, supra*, 173 F.3d at 754, quoting, *United States v. Hernandez-Alvarado*, 891 F.2d 1414, 1416 (9th Cir.1989), citing *Nicacio v. United States I.N.S.*, 797 F.2d 700, 705 (9th Cir.1985).

"In the context of stops made near a border, the Supreme Court has identified a non-exclusive set of factors that may be considered in determining whether reasonable suspicion exists: (1) characteristics of the area where the vehicle is encountered; (2) proximity to the border; (3) usual traffic patterns on the particular road; (3) previous experience with alien traffic; (4) recent illegal border crossings in the area; (5) erratic or evasive driving behavior; (6) aspects of the vehicle; and (7) the behavior or appearance of the driver." *United.States v. Diaz Juarez*,

299 F.3d 1138, 1141 (2002), citing, *United States v. Brignoni-Ponce*, 422 U.S. 873, 884-85 (1975).

In *United States v. Jimenez-Medina, supra*, the Ninth Circuit held that the following six factors were insufficient to establish reasonable suspicion: the type of vehicle; the slow speed of the vehicle; the driver's concern upon seeing law enforcement; the vehicle's registration; the area's reputation as a corridor for alien smuggling; and the time of evening. *Id.*, 173 F.3d at 755.

In *United States v. Hernandez-Alvarado,* the court held the following factors insufficient to establish reasonable suspicion: the nervousness of the defendant and his passengers; reducing the vehicle's speed from 65 to 55 m.p.h.; the presence of a two-way antenna on the trunk of the vehicle; the defendant's residence in a neighborhood along the U.S.-Mexican border which was under investigation for narcotics activity; the license plate bracket indicating that the car had been purchased from a dealership associated with drug trafficking, and the size of the vehicle's trunk. *Id*. 891 F.2d at 1418. In so doing, the court stated:

> "Considered jointly, these factors are insufficient to justify an investigatory stop. While they may allow certain inferences to be drawn, they describe too many individuals to create a reasonable suspicion that this particular defendant is engaged in criminal activity. For example, while the car dealership in question has been associated with drug activity, many citizens with no connection to drug trafficking also have purchased family vehicles there. Likewise, many law-abiding motorists have two-way antennas installed on their cars, live near the Mexican border, and reduce their speed on the freeway when being followed by a law enforcement vehicle. Thus, these facts in combination do not constitute reasonable suspicion." *Id.* at 1418-1419.

In *United States v. Rodriguez*, 976 F.2d 592, 594 (9th Cir.1992), the court found the following factors insufficient to support a finding of reasonable suspicion: interstate 8 is a "notorious route for alien smugglers"; the defendant did not acknowledge the agents as he passed

their marked car; the defendant's car was of a kind agents thought could be used for alien smuggling; the vehicle appeared to be "heavily loaded" and "kind of floated" over bumps in the road; the defendant is a Hispanic male; while being followed, the defendant looked at the agents several times in his rear-view mirror and swerved slightly within his lane.  The court found these factors insufficient because, inter alia, the profile tendered by the agents was "calculated to draw into the law enforcement net a generality of persons unmarked by any really articulable basis for reasonable suspicion." *Id.* at 596.

In *United States v. Garcia-Camacho*, 53 F.3d 244 (9th Cir. 1995), the court found the following factors insufficient and too similar to those previously rejected in *Rodriguez*

> "(1) interstate 5 is the "quickest route to economic opportunities" for illegal aliens; (2) defendants looked straight ahead and did not acknowledge Agent Madrid or his partner; (3) Garcia-Camacho's truck was of a kind that Agent Madrid thought could be used for alien smuggling; (4) the truck appeared heavily laden based on the way it reacted to bumps; (5) defendants are Hispanic males; (6) Garcia-Camacho was driving the truck faster than the flow of traffic, the truck appeared to accelerate as it passed agent Madrid's position, and the truck made a lane change near Madrid's position; (7) shortly after the truck passed the location of Agent Madrid, the passenger turned toward Madrid with a "surprised" and "terrified" look on his face; (8) the truck proceeded for "some distance"-around one to one-and-a-half miles-before pulling over." *United States v. Garcia-Camacho*, 53 F.3d at 246.

The court stated that the first five factors "are virtually identical to the factors that were insufficient in *Rodriguez*."   Moreover, factor (2) was discredited by *Gonzalez-Rivera v. INS*, 22 F.3d 1441, 1446 (9th Cir.1994).  A driver's failure to look at the Border Patrol is not a proper factor to consider in determining whether reasonable suspicion exist because "the opposite reaction, a driver's repeated glancing at a Border Patrol car, can also be used to justify the agent's suspicion.  To give weight to this type of justification 'would put the officers in a classic '"heads

I win, tails you lose'" position [and] the driver, of course, can only lose."] (citations omitted). *United States v. Garcia-Camacho*, 53 F.3d at 247

The court likewise discounted the acceleration of the vehicle as adding little or nothing to the analysis because the government had previously argued that deceleration "constituted suspicious conduct." *United States v. Garcia-Camacho*, 53 F.3d at 247, citing, *United States v. Hernandez-Alvarado, supra*, 891 F.2d at 1418.

The court added, "Presumably, the only nonsuspicious conduct would be if the driver kept constant speed while passing a Border Patrol car" yet added "It is not difficult to imagine the government one day arguing that driving at constant speed constitutes suspicious conduct because the best way to evade Border Patrol agents is not to stand out by going faster or slower than the normal flow of traffic; rather, it is to blend into the traffic." *United States v. Garcia-Camacho*, 53 F.3d at 247, fns. 4 and 5.

The court also rejected the nervous reaction of the defendant upon seeing the Border Patrol citing *Hernandez-Alvarado* where the court placed little weight upon "the nervous demeanor of both the defendant and his passengers as they sat in the truck" because they involved "the mere subjective impressions of [the] particular officer." *Id.* at 247-248, citing, *United States v. Hernandez-Alvarado, supra,* 891 F.2d at 1416, 1418-19.

Finally, the court rejected the government's reliance on *United States v. Franco-Munoz*, 952 F.2d 1055 (9th Cir.1991) as mandating a finding of reasonable suspicion. There, the following factors constituted reasonable suspicion: the defendant appeared Hispanic; the area where the car was stopped was "notorious for alien smuggling"; the defendant did not initially

acknowledge the agents' presence, but upon being followed, looked at the patrol car in his rear and side view mirrors several times; the defendant's car was a rental; defendant was stopped near a shift change; the car appeared heavily laden from the way it responded to bumps on the road. *United States v. Garcia-Camacho*, 53 F.3d at 246, citing, *United States v. Franco-Munoz, supra,* 952 at 1057.

The court found the only factor remotely applicable to this case was the last factor; however, it distinguished Garcia-Camacho's case because the vehicle in *Franco-Munoz* was a car, which appeared heavily laden even though it had only one passenger in it while Garcia-Camacho was driving "a truck with two passengers and a camper top, all of which contribute to the heavily laden nature of the vehicle. Moreover, unlike a passenger car, one of the normal uses of a truck is to transport heavy materials. Thus, the heavily laden aspect of the truck is less suspicious here." *United States v. Garcia-Camacho*, 53 F.3d at 249; see also, *United States v. Sigmond-Ballesteros*, 285 F.3d 1117, 1125 (9th Cir. 2002) ["light trucks and pick ups, although sometimes used by smugglers, as are many other types of vehicles, in recent years have been popular best-sellers, and are commonly used by those who are engaged in agricultural work, the construction trades, or any other trade which requires the carrying of heavy tools or implements."].

Although recognizing the difficult task faced by Border Patrol agents on a daily basis, the Ninth Circuit concluded the government had not established reasonable suspicion to stop the defendant's vehicle. The factors cited "'could certainly fit hundreds or thousands of law abiding daily users of the highways of Southern California,'" and the court refused to "'approve the

wholesale seizure of miscellaneous persons, citizens or non-citizens' in the absence of 'well-founded suspicion based on particular, individualized, and objectively observable factors which indicate that the person is engaged in criminal activity.'" *United States v. Garcia Camacho, supra,* 53 F.3d at 249, quoting, *United States v. Rodriguez, supra*, 976 F.2d at 596; see also, *United States v. Hernandez-Alvarado, supra,* 891 F.2d at 1418-19; *Gonzalez-Rivera v. INS, supra,* 22 F.3d at 1447.

In light of the foregoing, the factors relied on to stop defendant's vehicle were likewise insufficient to establish reasonable suspicion. Agents relied on the fact "the Crown Victoria had made at least two circles past the area where the suspected illegal aliens were picked up." In fact, the agents' report indicates the vehicle circled once around the area before heading westbound then north to the interstate.

As the Supreme Court noted in *Reid v. Georgia*, 448 U.S. 438, 441, 65 L. Ed. 2d 890, 100 S. Ct. 2752 (1980), conduct that "describes a very large category of presumably innocent travelers" is insufficient to constitute a reasonable suspicion.

Moreover, while proximity to the border is a relevant factor in determining whether there is reasonable suspicion to stop a vehicle in the border area, it cannot be the controlling factor. See *United States v. Brignoni-Ponce*, 422 U.S. 873, 884-85, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975).

As the Fifth Circuit noted in *United States v. Newell*, 506 F.2d 401 (5th Cir. 1975), "roads near the border carry not only aliens seeking to enter the

country illegally, but a large volume of legitimate traffic as well ... mere proximity to the border does not automatically place the citizenry within a deconstitutionalized zone." *Id.* at 405.

Finally, as the Ninth Circuit stated in limiting the effect of two cars driving in tandem, such occurrences "may be given some direct weight in the reasonable suspicion analysis. They do not, however, constitute substantial factors. . . ." *United States v. Montero-Camargo*, 208 F.3d 1122, 1139 (9th Cir. 2000). Here, it cannot even be shown that the Crown Victoria and the Aerostar were traveling in tandem.

In this case, agents had no more than a hunch the Crown Victoria was involved in a crime based on its having circled the area prior to heading toward the interstate and having driven past, in the opposite direction, without stopping, a van subsequently determined to be involved in alien smuggling.

None of the factors cited were sufficient to provide justification to stop the defendant's vehicle. Therefore, there was no legitimate basis to conduct the stop and detain defendant. All evidence seized as a result of the improper detention was done so illegally and must be suppressed. *United States v. Colin* 314 F.3d 439, 446 (9th Cir. 2002), citing, *United States v. Twilley*, 222 F.3d 1092, 1097 (9th Cir.2000) (finding that search and resulting seizure were products of illegal stop and that evidence therefore should have been suppressed); *United States v. Lopez-Soto*, 205 F.3d 1101, 1106 (9th Cir.2000) (suppressing evidence that police officer gathered pursuant to an unconstitutional stop); *United States v. Millan*, 36 F.3d 886, 890 (9th

Cir.1994) ("Because the interrogation and search were a direct result of the illegal stop, we hold that all of the evidence must be suppressed.").

## CONCLUSION

For all the foregoing reasons, defendant respectfully submits that the officer had an insufficient basis to legally justify the stop of the vehicle. Therefore, all evidence obtained by the government following the activation of the officer's emergency equipment should be suppressed.

Dated:  January 23, 2008              Respectfully submitted

                                      S/ Joseph Milchen
                                      Joseph Milchen
                                      Attorney for Defendant
                                      Ramon Gallardo-Samano